34 F.3d 1067
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Glenn SIMMONS, Defendant-Appellant.
 No. 94-5037.
 United States Court of Appeals, Fourth Circuit.
 Argued July 21, 1994.
Decided September 1, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Malcolm J. Howard, District Judge. (CR-93-8-H)
 Scott Christopher Hart, Rudolph Alexander Ashton, III, Sumrell, Sugg, Carmichael & Ashton, P.A., New Bern, NC, for Appellant.
 John S. Bowler, Asst. U.S. Atty., Janice McKenzie Cole, U.S. Atty., Jane H. Jolly, Asst. U.S. Atty., Raleigh, NC, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINS and WILLIAMS, Circuit Judges, and ANDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Anthony Glenn Simmons was indicted on May 4, 1993, for one count of conspiracy to possess with the intent to distribute cocaine base; one count of using a firearm during and in relation to a drug trafficking crime; and one count of possession with the intent to distribute cocaine base within 1,000 feet of an elementary school. Simmons' motion to suppress evidence seized from his automobile was denied on July 23, 1993. On September 3, 1993, a jury returned a verdict of guilty against Simmons on all counts. The district court denied Simmons' motion for a new trial, and sentenced him to a total of 211 months imprisonment. Simmons filed a timely notice of appeal on December 27, 1993.
 
 
 2
 On appeal, Simmons contends that the district court erred in the following particulars: (1) in denying his motion to suppress evidence seized from his automobile during an inventory search; (2) in allowing the government to cross-examine Simmons concerning his military service record; (3) in allowing the government to introduce marijuana seized from his automobile; (4) in allowing government witnesses to testify to Simmons' "suspicious" behavior; (5) in allowing the government to cross-examine a defense witness regarding Simmons' reputation as a drug user; and (6) in denying his motion for a new trial based on newly discovered evidence. Finding no reversible error, we affirm on all grounds.
 
 
 3
 After careful review of the record, we find that the Assistant United States Attorney's cross-examination of Simmons was improper and should not have been allowed. This error, however, was clearly harmless in light of the overwhelming evidence supporting the verdict.
 
 I.
 
 4
 Simmons claims that the district court erred in denying his motion to suppress evidence recovered during the inventory search of his automobile. He argues that the inventory search was merely a pretext because no forfeiture proceedings have ever been filed as to the automobile. Simmons further contends that because the agents lacked probable cause to seize the vehicle, the subsequent inventory search was also defective. The district court's denial of Simmons' motion to suppress involves a mixed question of law and fact. The denial of the motion itself is a question of law and as such our review of this issue is de novo. The factual findings underlying the lower court's decision, however, are subject to the clearly erroneous standard. United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir.1980); cert. denied, 450 U.S. 1030 (1981).
 
 
 5
 The district court properly denied Simmons' motion. The agents had probable cause to believe that Simmons' car had been used in the commission of a drug crime. The car was properly seized, and the officers were entitled to conduct a warrantless search of the vehicle for contraband. In addition, as the automobile was properly seized and in the custody of the authorities, the agents were entitled to conduct the inventory search.
 
 
 6
 21 U.S.C. Sec. 881(a) provides in pertinent part:
 
 
 7
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 8
 ...
 
 
 9
 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of [a controlled substance].
 
 
 10
 Also, 21 U.S.C. Sec. 881(h) (Supp.1993) states as follows:
 
 
 11
 All right, title, and interest in property described in subsection (a)of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section. "Seizure of a car subject to forfeiture may be made without process when the seizure is incident to an arrest, 21 U.S.C.Sec. 881(b)(1), or when the Attorney General has probable cause to believe that it has been used in violation of the laws pertaining to controlled substances." United States v. $29,000-U.S. Currency, 745 F.2d 853, 855-56 (4th Cir.1984); Sec. 881(b)(4). Once a vehicle is lawfully in police custody, it may be searched solely on the basis of probable cause to believe that it contains contraband, and there is no requirement that exigent circumstances exist to justify such a warrantless search. United States v. Johns, 469 U.S. 478, 484 (1985).
 
 
 12
 In the instant case, Simmons' car was identified at the scene of his arrest after he took delivery of a package containing roughly 56 grams of crack cocaine from an undercover agent. Simmons admits that he drove the car to the 200 D Glade Street address. That act, supported by the testimony of the government's witnesses, satisfies the "probable cause" requirement of Sec. 881(b)(4). United States v. Bizzell, 19 F.3d 1524, 1527 (4th Cir.1994).[1]
 
 
 13
 Once Simmons' car was seized, he lost his privacy interest in it, pursuant to Sec. 881(h), and it became subject to seizure under Sec. 881(a). Id. The search of the car was therefore proper. The mere fact that formal forfeiture proceedings have not been instituted against the vehicle does not alter our analysis. The car was properly seized.
 
 
 14
 In any event, the search of Simmons' vehicle was proper as an inventory search made pursuant to written procedure. Simmons was arrested at the scene, and his vehicle was seized pursuant to the above statute. Once the vehicle was lawfully in police custody, a warrantless inventory search was justified to protect Simmons' property, to safeguard the police against claims of theft or loss, and to protect the police against latent dangers. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). For the foregoing reasons, the decision of the district court to deny Simmons' motion to suppress is affirmed.
 
 II.
 
 15
 Simmons claims that the district court erred in allowing the government to cross-examine him about his drug use in the military and to introduce an exhibit showing that he was separated from the service for abuse of illegal drugs. We agree, but affirm the judgement because a review of the entire record convinces us that the introduction of this evidence constituted harmless error.
 
 
 16
 Prior to trial, defense counsel filed a motion in limine regarding any evidence relating to Simmons' discharge from the United States Army for cocaine use. The court granted this motion. Later at trial, defense counsel, in the process of introducing his client to the jury and eliciting background information, asked Simmons, "What did you do after that, sir?" Simmons responded, "I enlisted in the military, United States Army." Defense counsel then asked, "Now, after you were out of the service did you come back to North Carolina or did you go back to New York?" Simmons answered, "I went back to 1028 Bushwick." The Government argues that this exchange opened the door to cross-examination regarding Simmons' dishonorable discharge for drug abuse. The government contends that defense counsel attempted to bolster Simmons' credibility by portraying him as a veteran.
 
 
 17
 The Assistant United States Attorney began her cross-examination of Simmons by asking, "Mr. Simmons, you said that you didn't use marijuana, you have used cocaine, haven't you?" Defense counsel's objection was overruled. Simmons then answered yes, and the Assistant United States Attorney continued, "You have used cocaine a lot, haven't you?" Simmons denied this, and then asked Simmons to "[t]ell us about your cocaine use." Simmons then stated that he began using cocaine in the service, and that he had a positive urinalysis while in the military. Defense counsel immediately objected and called for a side bar conference. At that time, the court ruled that the Simmons' testimony on direct had opened the door previously closed by the motion in limine. This ruling was error.
 
 
 18
 In Berger v. United States, 295 U.S. 78, 88 (1935) the Court described the role of the United States Attorney as follows:
 
 
 19
 The United States Attorney is the representative not of a ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor--indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods designed to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
 
 
 20
 The conduct of the Assistant United States Attorney here fell short of that standard. Contrary to the government's assertion, defense counsel's direct examination of Simmons clearly respected the parameters of the motion in limine. In contrast, the Assistant United States Attorney opportunistically attempted to circumvent the court's clear order by attacking Simmons' credibility with inflammatory character evidence properly excluded under Federal Rule of Evidence 403. Indeed, we find it difficult to ascertain any purpose in this line of questioning other than an improper one. It is especially disturbing that the government's attorney, cognizant of the court's order, proceeded with this line of questioning without first requesting clarification from the court. In so doing, the Assistant United States Attorney came dangerously close to causing a mistrial or creating reversible error. Her decision to do so not only runs afoul of Rule 403, but it squarely affronts the purposes of Rule 404(b) as well.
 
 
 21
 Notwithstanding this behavior, our review of the record and the overwhelming evidence against Simmons convinces us the trial court's indulgence of this line of questioning constituted harmless error. In view of the overwhelming evidence against Mr. Simmons, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict absent this evidence. Fed.R.Evid. 404(b); United States v. McMillon, 14 F.3d 948, 955 (4th Cir.1994).
 
 III.
 
 22
 Simmons maintains that the district court erred in allowing the government to introduce marijuana seized from his car. Simmons argues because he was not charged with possessing, trafficking, conspiracy or distribution of marijuana, the introduction of the marijuana and packaging materials seized from his car should have been excluded under Rule 403 of the Federal Rules of Evidence.
 
 
 23
 Simmons' argument is unpersuasive. Simmons was charged with conspiracy to possess with intent to distribute crack cocaine, a Schedule II controlled substance. At the time of his arrest for that offense, the police discovered in his vehicle seven packages of marijuana, likewise a Schedule II controlled substance. This evidence was properly admitted to show his knowledge and intent. Fed.R.Evid. 404(b). "Once it is determined that the extrinsic offense requires the same intent as the charged offense ... [it] is relevant ... to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent." United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir.1991), quoting, United States v. Beechum, 582 F.2d 898, 913 (5th Cir.1978). In light of the special difficulty of proving intent in conspiracy cases, the district court did not err in allowing the government to introduce the drugs found in Simmons' car. See United States v. Glen-Archila, 677 F.2d 809, 816 (11th Cir.1982), citing, United States v. Roberts, 619 F.2d 379, 382-83 (5th Cir.1980).
 
 IV.
 
 24
 Simmons next contends that the district court erred in allowing postal workers to testify that Simmons' behavior was "suspicious" prior to his arrest. Simmons maintains that this characterization was improper because the witnesses were not qualified to make them.
 
 
 25
 This argument is without merit. Federal Rule of Evidence 701 provides that if a witness is not testifying as an expert, testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a)rationally based on the perception of the witness and (b)helpful to a clear understanding of the testimony or the determination of a fact in issue. The witnesses' characterization of Simmons' conduct as "suspicious" conformed to the requirements of Rule 701. A lay witness is competent to relate opinion testimony of matters within the common experience of most persons. New York Life Insurance Co. v. Harrington, 299 F.2d 803 (9th Cir.1962) (look of surprise when gun fired). The witnesses observed Simmons at length as he attempted to retrieve a package addressed to another individual. It was not improper to allow them to testify as to the impression this conduct made upon them.
 
 V.
 
 26
 Simmons claims that the district court erred in allowing the government to cross-examine a defense witness, Aleus Lee, concerning statements made by Lee's wife regarding Simmons' drug activities. At trial, Mr. Lee, Simmons' cousin, testified on behalf of Simmons. Lee testified that he had never seen Simmons using drugs or appearing to be under the influence of drugs. On cross-examination, however, Lee admitted that he had earlier told officers that his wife had told him that she had heard that Simmons was a drug user.
 
 
 27
 The district court did not abuse its discretion in allowing the government to impeach Lee with his prior inconsistent statement. The defense called Lee for the specific purpose of establishing Simmons' lack of involvement with drugs. Consequently, it was not error to allow the government to attack Lee's credibility on this issue using hearsay evidence. United States v. Ince, 21 F.3d 576, 579-80 (4th Cir.1994).
 
 VI.
 
 28
 Lastly, Simmons contends that the district court erred in denying his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure on the basis of newly discovered evidence. Simmons' motion relies on defense counsel's post-trial confirmation that a Robert Tony Perkins does in fact live in Elizabeth City, North Carolina, and that he is the cousin of government witness Monette Childress. Simmons argues that had this evidence been presented to the jury, they would have rendered a judgment of acquittal. We disagree.
 
 
 29
 The decision to grant a new trial lies solely within the discretion of the trial court, and may not be overturned absent an abuse of discretion. United States v. Williams, 613 F.2d 573, 575 (5th Cir.), cert. denied, 449 U.S. 849 (1980). The Fourth Circuit has enumerated five requirements for granting a new trial under Fed.R.Crim.P. 33:
 
 
 30
 (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court can infer diligence on the part of the movant; (c) the evidence relied upon must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.
 
 
 31
 United States v. Bales, 813 F.2d 1289, 1295 (4th Cir.1987), citing Mills v. United States, 281 F.2d 736, 738 (4th Cir.1960), quoting Johnson v. United States, 32 F.2d 127, 130 (8th Cir.1929). An affirmative answer to each of these inquiries is necessary to justify a new trial. Id.
 
 
 32
 Simmons has failed to show that this evidence could not have been discovered before trial. Defense counsel was alerted prior to trial that members of the Perkins family were suspected by authorities of being involved in drug trafficking. This evidence was in the form of an affidavit by a member of the Northeast Regional Task Force, Lieutenant Joe Tade, who was called at trial as a witness for the defense. Tade confirmed the information in the affidavit, and testified that a Tony Perkins lived in the area and was suspected of trafficking in narcotics. During cross-examination, government witness Monette Childress was asked if she had a cousin by that name, but denied it. Defense counsel, after the trial ended, confirmed his theory by calling the local Clerk of Court, who verified that a Robert Tony Perkins did in fact live in the vicinity.
 
 
 33
 It is well settled that evidence is not "newly discovered" if it could have been discovered by the diligence of a defendant or his counsel before trial. Aliff v. Joy Manufacturing Company, 914 F.2d 39, 44 (4th Cir.1990). In the instant case, the evidence now offered was "discovered" by making a single telephone call, a call that clearly could have been made prior to Simmons' trial. As such, this evidence is not "newly discovered", and is not sufficient to serve as the basis for a new trial. Id.
 
 
 34
 In any event, this evidence, while probative of a material issue, fails the fifth requirement of Bales in that it is not of such weight or "nature" as would likely produce an acquittal should a new trial be ordered. 813 F.2d at 1295. Lieutenant Tade testified at trial as to the existence of a suspected narcotics dealer named Tony Perkins in the area. During his cross-examination of Ms. Childress, defense counsel implied that Perkins was related to Ms. Childress. It is unlikely that the mere confirmation of Perkins' existence and his link to Ms. Childress would sway the jury in light of the overwhelming evidence supporting Simmons' guilt. The district court correctly denied this motion.
 
 AFFIRMED
 
 
 [1]
 The government's burden of proof in this instance is provided by 19 U.S.C. Sec. 1615 (1980 & Supp.1993). United States v. Misc. Jewelry, 667 F.Supp. 232, 237 (D. Md.1987), aff'd, 889 F.2d 1317 (4th Cir.1989). The government has the initial burden of showing that probable cause exists to begin forfeiture proceedings, that is, "probable cause to believe that a substantial connection existed between the property to be forfeited and the criminal activity defined by the statute." United States v. 30.80 Acres, 665 F.Supp. 422, 424 (M.D.N.C.1987), quoting, United States v. Premises Known as 2639 Meetinghouse, 633 F.Supp. 979, 986 (E.D.Pa.1986), aff'd, 856 F.2d 675 (4th Cir.1988)